NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : | Criminal Action No. 08-CR-0757 (DMC) |
|  | : |  |
| THOMAS TELFAIR | : |  |
| a/k/a "Hassan Gatling" | : |  |
|  | : |  |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon a series of motions by Defendant Thomas Telfair ("Defendant") and the United States of America ("Government").  After considering the submissions of the parties, and based upon the following, the Court finds that: Defendant's motion to dismiss the second superseding indictment is **denied**; Defendant's motion to be released on bail is **denied**; Defendants's motion to suppress statements made and evidence seized is **denied**; Defendant's motion for production of Jencks Act material is **denied as moot**; Defendant's motion for production of Rule 404(b) evidence is **granted**; Defendant's motion for production of exculpatory and impeachment materials is **granted in part, denied in part**; Defendant's motion requesting that the Government preserve notes of government agents is **granted**; Defendant's motion for a polygraph test is **granted in part, denied in part**; Defendant's motion for a change of venue is **denied**; and the Government's request for a hearing is **granted**.

I.    <u>BACKGROUND</u>[1]

On or about September 5, 2006, officers of the Newark Police Department were dispatched to a residence at 185 Parker Street, Newark, New Jersey, to investigate a report of gunfire.  Upon arriving at the scene, officers were met by two occupants of the residence who stated that they had heard gunshots fired at the backdoor of the home.  Law enforcement officers investigated the rear entrance to the home and discovered several bullet holes in the back door and empty shell casings nearby.

After entering the residence with the apparent consent of the two occupants, law enforcement officers observed bullet holes in the front of a refrigerator in the kitchen.  An officer then examined and opened the refrigerator, finding a projectile in the bottom of the refrigerator. While searching for other projectiles and evidence of the shooting, the officer discovered in plain view clear plastic containers holding a substance resembling cocaine base.  The officers subsequently discovered an additional substance that field tested positive for the presence of heroin, as well as several small bags containing quantities of heroin.

On the following day, agents from the Drug Enforcement Administration (the "DEA") interviewed the two occupants, who stated that the heroin discovered in the residence belonged to an individual named "Hassan Gatling," an apparent alias for Defendant.  The two occupants stated that they packaged certain quantities of heroin discovered at the residence at the direction of Defendant for the purpose of distribution.  The two occupants further stated that they had

_____

[1]The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

received payment, in the form of cash and goods, from Defendant for preparing and packaging the heroin for distribution.

A complaint and an arrest warrant were allegedly issued for Defendant on or about September 8, 2006. On January 23, 2007, Defendant was arrested at the home of his girlfriend, Catrina Gatling. Law enforcement officers apparently identified themselves to Defendant outside the home, where Defendant allegedly requested to return to the inside of the home to talk to the officers. The officers complied with Defendant's request and permitted him to unlock the door, turn off the alarm system, and enter the inside of the home. Law enforcement officers then conducted a protective sweep of the premises, seizing no items. Defendant was apparently read his Miranda rights, and allegedly indicated that he understood his rights. Defendant allegedly stated that he wanted to cooperate with the officers. At this time, the officers conducted a search incident to arrest of Defendant's person and seized three cellular telephones and a wallet containing several business cards.

During a post-arrest interview with law enforcement, Defendant apparently admitted that he had engaged in criminal conduct and narcotics trafficking with several individuals on numerous occasions in the State of New Jersey and elsewhere. After extensive questioning, Defendant requested to speak with his attorney, Paul Bergrin. Law enforcement officers allegedly complied with Defendant's request and ceased questioning him.

After a brief continuance following Defendant's arrest, a one-count criminal indictment was filed on March 29, 2007 charging Defendant with conspiracy to distribute and to possess with the intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a),

3

841(b)(1)(B)(I), and 846.  A superseding indictment was filed on May 7, 2007 ("first superseding indictment") charging Defendant with conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(I), and 846.

The first superseding indictment was dismissed without prejudice by the Court on October 7, 2008 in order to remedy violations of the Speedy Trial Act ("STA").  Shortly thereafter, Defendant was arraigned on a two-count indictment ("second superseding indictment") charging conspiracy to distribute and to possess with intent to distribute 1 kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846, and distribution and possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B), and 18 U.S.C. § 2.

Currently before the Court are a series of motions filed by both Defendant and the Government.  Defendant has made roughly ten separate *pro se* filings since his re-indictment (in both the prior and current dockets) that typically contain multiple and repetitive requests.  From these filings, the Court has identified ten substantive motions upon which it appears that Defendant seeks relief, including: a motion to dismiss the second superseding indictment; a motion to be released on bail; a motion to suppress statements made and evidence seized; a motion for production of <u>Jencks</u> materials; a motion for production of Rule 404(b) evidence; a motion for production of exculpatory and impeachment materials; a motion requesting that the Government preserve notes of government agents; a motion for a polygraph test; and a motion

for a change of venue.[2]  The Government has made only one filing, requesting that a hearing be

held so that it can be determined whether Defendant intends to proceed *pro se* or represented by

counsel, and, if represented by counsel, requesting that Defendant be prohibited from filing

further *pro se* motions.

## II.   DISCUSSION

A.   *Motion to Dismiss the Second Superseding Indictment*

Defendant requests that the second superseding indictment be dismissed due to violations

of the STA, due process, and double jeopardy.  Because none of these theories support

dismissing the superseding indictment in this case, Defendant's motion to dismiss is denied.

I.   The Speedy Trial Act

Defendant argues that the second superseding indictment should be dismissed because the

original indictment was untimely and because trial did not commence within the statutorily-

mandated period.  The STA requires that a defendant be indicted within thirty days following

arrest or service of summons and be brought to trial within seventy days following indictment or

initial appearance.  See 18 U.S.C. § 3161(c).  The STA clock may be tolled according to a series

of statutorily-prescribed circumstances, including delays resulting from interlocutory appeal and

pretrial motions.  Id. § 3161(h).

In this case, any STA defects associated with the original or first superseding indictments

were remedied by the Court's dismissal without prejudice of the first superseding indictment on

---

[2]As an aside, the Court notes that many of these exact motions and arguments were considered and decided by the Court in a hearing on April 7, 2008 and a related Order issued on May 20, 2008 (Dkt. 07-cv-272, no. 45). Although it is not obligated to do so, the Court will consider Defendant's motions and explain its decisions here.

October 7, 2008.  The STA clock began to run anew following Defendant's arraignment under the second superseding indictment on October 8, 2008, only to be tolled when Defendant filed his first *pro se* pretrial motion on October 21, 2008.  See id. § 3161(h)(1)(F).  As a result, only twelve days have elapsed on the second superseding indictment's STA clock, leaving fifty-eight days before Defendant's trial must begin.  Accordingly, Defendant's motion to dismiss the second superseding indictment under the STA is denied.

ii.    Due Process

Defendant next alleges that the second superseding indictment should be dismissed because his Fifth Amendment due process rights have been violated.  Specifically, Defendant alleges three bases for finding a due process violation: first, on the procedural grounds that his arrest was unlawful and that no probable cause hearing was conducted in obtaining the indictment; second, that law enforcement officers and prosecutors engaged in misconduct; and third, that the length of time it has taken for Defendant to be brought to trial is excessive and constitutionally prohibited.  Courts have inherent power to dismiss an indictment in the face of due process violations.  See State v. Gaffey, 92 N.J. 374, 384 (1983).  In this case, however, the Court is far from persuaded that a due process violation has occurred.  It appears, for example, that the Government's arrest of Defendant was in fact lawful, and that the indictment was indeed procured through a probable cause determination by a grand jury.  Furthermore, the Court finds that Defendant's bald allegations of misconduct both lack credibility and fail to rise to a level warranting dismissal of the indictment.  Finally, and as will be more fully explained in Section B of this Opinion, the approximately twenty-two month delay in bringing Defendant's case to trial

does not rise to the level of a due process violation.  Accordingly, because the Court finds that Defendant's due process rights have not been violated, Defendant's motion to dismiss the second superseding indictment on this ground is denied.

### iii.   Double Jeopardy

Finally, Defendant alleges that his Fifth Amendment "double jeopardy" rights have been violated by the filing of the second superseding indictment.  The constitutional prohibition against double jeopardy is "designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense."  United States v. DiFrancesco, 449 U.S. 117, 127 (1980).  The Clause exists to prevent the State from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."  Serfass v. United States, 420 U.S. 377, 388 (1975).  Importantly, however, the protections of the Double Jeopardy Clause apply only after the "attachment of jeopardy"—*i.e.*, the moment in a litigation when the defendant has been "put to trial before the trier of facts, whether the trier be a jury or a judge."  Id.  In a criminal trial, for example, jeopardy attaches only when the defendant faces the risk of determination of guilt, id. at 391–92; in a jury trial, jeopardy attaches when the jury is impaneled and sworn.  See Crist v. Bretz, 437 U.S. 28, 29 (1978).

In this case, double jeopardy is a non-issue because jeopardy did not attach under the original or first superseding indictments.  See Serfass, 420 U.S. at 389 (finding that "jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the

7

indictment").  Accordingly, Defendant's motion to dismiss the indictment under the Double

Jeopardy Clause is denied.

        B.     *Motion to be Released on Bail*

        Defendant next moves to be released on bail by arguing that the length of his pre-trial

detention violates the constitutional protections of due process and equal protection.[3]  Defendant

was denied bail in a detention hearing before Magistrate Judge Schwartz on May 30, 2007.  This

denial was based on findings that Defendant was both a flight risk and a danger to the

community.  Defendant does not appear to contest these findings.  Rather, Defendant argues that

the length of his detention, which has now reached approximately twenty-two months, violates

due process.

        The Bail Reform Act of 1984 does not address the permissible length of pre-trial

detention, relying instead on the provisions of the STA to regulate detention length.  United

States v. Accetturo, 783 F.2d 382, 387 (3d Cir. 1986).  Nonetheless, "at some point due process

may require a release from pretrial detention."  Id. at 388.  Thus, a prior determination under the

Bail Reform Act that detention is necessary does not prevent a defendant from petitioning for

release at a later time on due process grounds.  Id.  Courts entertaining such a petition should

consider "the factors relevant in the initial detention decision, such as the seriousness of the

charges, the strength of the government's proof that defendant poses a risk of flight or a danger to

the community, and the strength of the government's case on the merits."  Id.  Furthermore, due

---

[3]Defendant summarily alleges that his equal protection rights have been violated without providing any
support whatsoever for a finding that he was discriminated against or treated unequally in any manner.  Accordingly,
Defendant's request for bail on this ground is denied.

process judgments should "reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." Id.

In this case, it appears that the factors relevant to the initial detention decision, including the seriousness of the offense, the risk of flight and danger to the community, and the strength of the Government's case, all continue to weigh heavily towards continuing detention. With respect to the additional factors cited by the Third Circuit, the Court recognizes that Defendant has been detained for nearly twenty-two months. The Court also notes, however, that most of the delays in this case are due to the inherent complexities accompanying the significant number of motions and changes of counsel that have been made by Defendant. Accordingly, because the Court finds that Defendant's twenty-two month pre-trial detention does not rise to the level of a due process violation, Defendant's motion to be released on bail is denied.

C.    *Motion to Suppress Statements Made and Evidence Seized*[4]

Defendant moves to suppress both the post-arrest statements he made to law enforcement officers in January 2007 as well as the evidence seized by law enforcement officers during searches at 185 Parker Street and 62 Winthrop Street in September 2006 and January 2007, respectively. Because the Court finds both that Defendant's statements were voluntary and that the evidence in question was lawfully obtained, and because Defendant provides little evidence to the contrary, Defendant's motion to suppress is denied.

---

[4]The Court notes that it already considered and denied Defendant's substantially similar motion to suppress both his post-arrest statements and the evidence seized during law enforcement's search of the two properties in its Order of May 20, 2008.

9

I.    <u>Post-Arrest Statements</u>

Defendant argues that his post-arrest statements were involuntary and should be suppressed. In support of his claim, Defendant asserts that the statements were made only after law enforcement officers threatened and intimidated him, failed to advise him of his <u>Miranda</u> rights, and ignored his requests to have counsel present. When a confession is challenged as involuntary, the prosecution bears the burden of proving by "at least" a preponderance of the evidence that the confession was in fact voluntary. <u>Lego v. Twomey</u>, 404 U.S. 477, 489 (1972). In this case, the Government bears the burden of showing that Defendant was advised of his constitutional rights prior to his confession and that he both knowingly and intelligently waived them. <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938). As part of this showing, the Government must show that it did not improperly coerce Defendant's confession through threatening or intimidating actions. The Court, however, sees no need to suppress the statements or hold a pre-trial evidentiary hearing at this time, and will instead allow the Government to lay a proper foundation for this evidence at trial. Defendant's motion to suppress his post-arrest statements is therefore denied.

ii.    <u>Seized Evidence</u>

Defendant also moves to suppress evidence seized by law enforcement officers during searches of the residences at 185 Parker Street and 62 Winthrop Street. Defendant argues that the searches were unconstitutional because, he alleges, law enforcement officers lacked a search warrant or an applicable exception. Leaving aside issues of standing, the Court nonetheless is unpersuaded by these arguments, and finds that in each case the Government conducted a lawful

search and seizure.  In the case of 185 Parker Street, for example, the Court finds that law

enforcement officers were justified in entering the premises both because they had the voluntary

consent of the residence's occupants, see Schneckloth v. Bustamante, 412 U.S. 218, 219 (1973),

and because the exigent circumstances exception to the warrant requirement allowed entry.  See

Warden v. Hayden, 387 U.S. 294, 298–99 (1967).  Further, once inside, the narcotics seizure was

lawful under the exigent circumstances and plain view exceptions to the warrant requirement,

among others.  See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).  Similarly, with

respect to the search at 62 Winthrop Street, the Court finds that law enforcement was justified in

searching the Defendant's person and the residence under the search incident to arrest exception

to the warrant requirement, see United States v. Robinson, 414 U.S. 218, 235 (1973), as well as

the limited protective sweep permitted in connection with an arrest.  See Maryland v. Buie, 494

U.S. 325, 337 (1990).  Because the Court finds both searches to be lawful, and because

Defendant provides scant evidence to the contrary, Defendant's motion to suppress the evidence

seized at 185 Parker Street and 62 Winthrop Street is denied.

D.      *Jencks Act Material*[5]

Defendant next requests that the Court require the Government to disclose witness lists

and Jencks Act materials in advance of trial.  In this case, however, the Government has already

produced Jencks Act materials, a witness list, and its exhibit book to the Defendant.

Furthermore, the Government has agreed that any further Jencks Act material of which it

---

[5]The Court already considered and granted Defendant's substantially similar motion for production of
Jencks material in its Order of May 20, 2008.

becomes aware will also be produced prior to the relevant witness's testimony.  Accordingly, Defendant's motion for early disclosure of <u>Jencks</u> Act materials is denied as moot.

E.      *Rule 404(b) Evidence*[6]

Defendant moves for pre-trial disclosure of any "other crimes" evidence that the Government intends to rely upon at trial.  Fed. R. Evid. 404(b) requires that, upon request, the prosecution must provide reasonable notice in advance of trial of the general nature of any prior bad acts evidence it intends to introduce at trial.  In this case, the Government has stated its intention to comply with Rule 404(b) and the Court's discovery Order, which requires that notice of Rule 404(b) evidence be provided to the defense ten calendar days before trial.  Accordingly, Defendant's motion for pre-trial disclosure of Rule 404(b) evidence is granted.

F.      *Exculpatory and Impeachment Evidence*[7]

Defendant next moves for the disclosure of exculpatory evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and impeachment materials under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  The Court has already issued a discovery Order addressing these materials, requiring that <u>Brady</u> evidence be produced by October 26, 2008, and that <u>Giglio</u> materials be disclosed "sufficiently in advance of the witness's testimony to avoid delay in the trial."  The Government has expressed its intent to comply with both of these requirements, stating that it currently is unaware of the existence of any <u>Brady</u> evidence, and that it will provide <u>Giglio</u>

---

[6]The Court already considered and granted Defendant's substantially similar motion for production of Rule 404(b) evidence in its Order of May 20, 2008.

[7]The Court already considered and granted Defendant's substantially similar motion for production of <u>Brady</u> and <u>Giglio</u> materials in its Order of May 20, 2008.

materials on the day of jury impanelment.  As a result, it appears that the only remaining issue is

the timing of the Giglio disclosures, with Defendant apparently requesting immediate disclosure,

rather than on the day of jury impanelment as suggested by the Government.  Giglio materials

need not be disclosed pre-trial, however, and the Court sees no reason in this case to require

production prior to the day of jury impanelment.  See United States v. Higgs, 713 F.2d 39, 43 (3d

Cir. 1983) ("Disclosure [on the day the witness testifies] will fully allow [the defendant] to

effectively use that information to challenge the veracity of the government's witness.").

Accordingly, to the extent that Defendant moves merely for the timely disclosure of Brady and

Giglio evidence, Defendant's motion is granted.  To the extent that Defendant moves for

immediate disclosure of these materials, however, his motion is denied.

        G.      *Preservation of Records*[8]

Defendant requests that the Government preserve all of the "rough notes" recorded by law

enforcement officers in connection with its investigation.  In response, the Government has

acknowledged its obligation to preserve notes of interviews and handwritten drafts of reports,

and asserts that it will abide by this requirement.  See United States v. Ammar, 714 F.2d 238,

259 (3d Cir. 1983).  Accordingly, Defendant's motion for the preservation of these documents is

granted.

        H.      *Polygraph Test*

Defendant appears to request permission to use a polygraph test in his defense, though it

---

[8]The Court already considered and granted Defendant's substantially similar motion for preservation of rough notes of government agents in its Order of May 20, 2008.

is unclear whether he requests that the Government provide the test or whether he intends to conduct the test on his own.  To the extent that Defendant requests that the Government provide the test, the Court is unaware of any authority requiring the Government to provide such an examination, and Defendant's motion is denied.  To the extent that Defendant wishes to conduct a polygraph test on his own, however, the Court notes that polygraph tests are not excluded *per se* in the Third Circuit, see <u>United States v. Lee</u>, 315 F.3d 206, 214 n.6 (3d Cir. 2002), and that the Defendant may attempt to submit the results of a polygraph test at trial subject to the Federal Rules of Evidence.

I.       *Venue*

Defendant requests a change of venue due to what he describes as "serious judicial neglect, serious government misconduct, serious prosecutorial and/or procedural violation(s) and/or neglect."  Fed. R. Crim. P. 21(a) requires a court to transfer a proceeding to another district if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."

In this case, no evidence exists to support a finding that Defendant cannot obtain a fair and impartial trial in the District of New Jersey.  In support of his request, Defendant alleges only that "nothing is being done" despite his having filed an "enormous amount" of *pro se* motions and other complaints.  Because Defendant's bare allegations of neglect fail to meet the prejudicial standard established by Rule 21(a), his motion to transfer venue is denied.[9]

---

[9]Furthermore, Defendant's allegations against his attorney will be addressed at the forthcoming hearing to determine whether Defendant is satisfied with his counsel.

J.      *Motion for a Hearing*

Finally, the Government requests that a hearing be held so that the Court can determine whether Defendant is satisfied with his counsel or otherwise has a legally justifiable reason entitling him to substitute new counsel, whether Defendant would prefer to proceed *pro se* at trial with a court-appointed standby counsel, and whether Defendant is aware that no constitutional right to a "hybrid representation" exists should he elect to proceed with counsel.  Because Defendant continues to file *pro se* motions despite being represented by counsel, and because Defendant has repeatedly expressed displeasure with his counsel through his *pro se* filings, the Court will hold a hearing to resolve the matters described above.  The Government's motion for a hearing is therefore granted.

## III.  CONCLUSION

For the reasons stated, it is the finding of this Court that: Defendant's motion to dismiss the second superseding indictment is **denied**; Defendant's motion to be released on bail is **denied**; Defendants's motion to suppress statements made and evidence seized is **denied**; Defendant's motion for production of Jencks Act material is **denied as moot**; Defendant's motion for production of Rule 404(b) evidence is **granted**; Defendant's motion for production of exculpatory and impeachment materials is **granted in part, denied in part**; Defendant's motion requesting that the Government preserve notes of government agents is **granted**; Defendant's motion for a polygraph test is **granted in part, denied in part**; Defendant's motion for a change of venue is **denied**; and the Government's request for a hearing is **granted**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:           December  10  , 2008
Orig.:          Clerk
cc:             All Counsel of Record
                Hon. Mark Falk, U.S.M.J.

15