Tommie H. Telfair
Reg. No.: 28440-050
FCI Fort Dix
P.O. Box 2000
Unit: (5752)
JBMDL, NJ 08640




January 20, 2021

OFFICE OF THE CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN, NJ ?

Re: EXHIBIT (A) IN SUPPORT OF
CASE NO.: 08-cr-0757-KM



Dear Honorable Court:

Please accept the attachment material(s) (i.e., Exhibit (AA) in support of Mr. Telfair's pending motion for compassionate release.

Respectfully submitted,

Tommie H. Telfair

CC:
AUSA
Camden, NJ
Cory Booker
Robert Menendez




WASHINGTON, DC 20510

RECEIVED
JAN 26 2021
AT 8:30 M
WILLIAM T. WALSH
CLERK

January 12, 2021

Warden David Ortiz
Bureau of Prisons
FCI Fort Dix
5756 Hartford & Pointvile Road
Joint Base MDL, New Jersey 08640

Dear Warden Ortiz,

We write today with serious concerns regarding the use of home confinement, as well as overall conditions at FCI Fort Dix, especially in light of the alarming rate of COVID-19 cases at the facility in recent weeks. On March 26, 2020, in an effort to protect incarcerated individuals who were at greater risk of contracting the deadly coronavirus, Attorney General William Barr issued a Memorandum[1] to the Director of the Bureau of Prisons (BOP) to ensure that the agency prioritizes the home confinement program to protect the health and safety of incarcerated individuals and BOP employees. The following week, Attorney General Barr issued a subsequent Memorandum[2] that urged BOP administrators at facilities significantly impacted by the virus to immediately maximize transfers of individuals to home confinement.

In June 2020, during a Senate Judiciary Committee hearing, Senator Booker pressed Director Michael Carvajal about the difficulty of obtaining critical data on individuals who were released to home confinement in New Jersey. While Director Carvajal assured Senator Booker that he would attempt to get his office this important information,[3] the requested data has still not been received. While we appreciate you and your staff briefing our offices on the COVID-19 outbreaks at FCI Fort Dix, and for your continued correspondence on some of the outstanding facts and figures our offices have requested, there are still questions to be answered in addition to those raised by the two subsequent letters we sent to Director Carvajal.[4]

---

[1]Attorney General William Barr, Memorandum for Director of Bureau [sic] Prisons, Prioritization of Home Confinement As Appropriate in Response to COVID-19 (Mar. 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.

[2] Attorney General William Barr, Memorandum for Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf.

[3] *Examining Best Practices for Incarceration and Detention During COVID-19, Before the S. Comm. on the Judiciary*, 116th Cong. (2020), https://www.judiciary.senate.gov/meetings/examining-best-practices-for-incarceration-and-detention-during-covid-19.

[4] Letter from Sen. Robert Menendez, Sen. Cory Booker et al. to Director Michael Carvajal, Bureau of Prisons (Nov. 9, 2020), *available at* https://www.menendez.senate.gov/imo/media/doc/Senator%20Menendez%20Letter%20on%20FCI%20Fort%20Dix%20COVID19%20Outbreak%2011.9.20%20Updated.pdf.

The conditions at facilities in New Jersey, specifically your facility, have grown increasingly worrisome. We are still very concerned for the safety and well-being of individuals behind bars in New Jersey and across our country. It is critical that you prioritize the use of your statutory authorities to grant home confinement to as many eligible people as possible. To better understand your institution's implementation of the congressionally approved home confinement program, as well as Attorney General Barr's orders to prioritize home confinement to protect individuals behind bars and staff from the deadly coronavirus, we request that you respond to the following questions:

**Home Confinement Program:** The Attorney General's Memorandum laid out discretionary factors to be considered when assessing an individual's eligibility for home confinement and called for BOP officials to make broad, extensive use of the program for all eligible individuals. It remains to be seen, however, whether federal prisons have implemented the program as Congress and the Attorney General intended.

1. On November 9, 2020, you estimated that between April 16 and November 9, 2020, FCI Fort Dix had released approximately 97 people to home confinement under the CARES Act. At the time, this constituted less than 3.5% of the total incarcerated population at FCI Fort Dix, which is a low and minimum security prison. Among the 97 released individuals, 66% were white, 29% were Black, 3% were Asian, 2% were Native American. According to information from BOP, the overall makeup of the population of FCI Fort Dix is 51% white, 47% Black, 1% Asian, and .4% Native American. How do you explain these discrepancies?

2. How many individuals are currently eligible to be transferred to home confinement?

3. In your assessment of an individual's eligibility for release under the home confinement program, you mentioned that factors such as disciplinary history, PATTERN score, and their living conditions upon release weigh into your decision. Please share the underlying offense for every individual denied release, as well as their disciplinary history, PATTERN score, and their stated living condition upon release anonymized to protect the privacy of incarcerated individuals.

4. How many individuals at FCI Fort Dix are ineligible for home confinement?

5. You informed our office that 1,036 incarcerated individuals have a "history of violence", and 588 have an "instant offense of violence". Please provide an explanation for both terms and the difference between the two. How does your facility weigh these classifications for purposes for determining eligibility for home confinement?

5. I understand that you received a list from BOP of individuals to initially screen for home confinement.

    a. How many individuals were on that list?

b. How many of those individuals were approved for home confinement?

c. How many of those individuals were denied transfer to home confinement?

d. What is the process for an individual to appeal their denial for home confinement?
e. How many initial applicants that were rejected appealed?

f. What is the success rate on appeal?

6. What is the process for any individual who feels they may be eligible for home confinement, but was not included on the initial list provided by BOP?

7. We have heard from constituents at FCI Fort Dix that it could take months to be approved and then transferred to home confinement. On average, how much time does it take to identify, review, and release an individual under the home confinement program?

8. How many individuals at your facility have been transferred to home confinement from March 2020 until the present?

    a. How many individuals have been denied home confinement during that period? Please provide our offices with a report on the age, race, and offense(s) of the individuals who were denied home confinement.

9. Are individuals who are transferred to home confinement provided with reentry resources to connect to local agencies and nonprofits? If so, please provide additional details on what resources are provided to individuals transferred to home confinement.

**Medical Care at FCI Fort Dix:** The Centers for Disease Control and Prevention guidance says to avoid large gatherings and social distance, however, the conditions of confinement do not allow incarcerated individuals to engage in many of the recommended precautions necessary to propery protect themselves. In fact, we know that individuals are grouped in cohorts that could include hundreds of people in close proximity to each other throughout the day. Due to the ease and speed with which COVID-19 can spread, we must ensure that facilities are safe and clean for those who aren't released to home confinement. For those individuals who have tested positive for the virus and require medical care, we have serious concerns about whether the medical care available on-site can adequately treat this complex virus.

1. How often do incarcerated individuals and staff receive new PPE?

2. What is the protocol at your facility to ensure that there is enough PPE, hand sanitizer, and soap for individuals and staff?

3. How much PPE do you currently have in stock?

4. Has FCI Fort Dix taken measures to allow for proper social distancing and minimization of contact between groups of incarcerated indviduals in line with CDC guidance?

5. On a prior call with some of our staff, you mentioned dormitory style arrangements on each floor that grouped individuals into cohorts. Some floors house about 100 individuals, while other floors could have as many as several hundred individuals.

    a. Please elaborate on this set-up in more detail.

    b. At the present time, how many cohorts of individuals are on each floor, in each compound?

6. What are you doing to ensure that all individuals in cohorts are COVID-19 negative?

    a. What is the procedure for re-testing individuals in cohorts for COVID-19?

7. What is your procedure for quarantining individuals who have tested positive for COVID-19?

    a. Please describe the space and conditions in which COVID-19 positive individuals are isolated.

    b. Are individuals under medical isolation placed in the segregated housing units? If so, how are you ensuring that medical isolation is *operationally and noticeably distinct* from those who are placed in segregated housing units?

    c. How often do individuals in medical isolation have access to medical staff?

8. Please describe the types of treatments and care available to individuals who have tested positive for COVID-19.

    a. Are they treated on site or are they transferred to an outside treatment center? If they are transferred to an outside treatment center, please detail where individuals are transferred to?

    b. If an individual experiences symptoms (e.g., low oxygen levels) that may require critical care, are they treated on site or transferred to a local hospital?

    c. What kind of drugs are administered to incarcerated patients who are suffering from COVID-19?

    d. Are local officials provided updates on conditions within the facility to ensure public safety? If so, please describe how often and what kind of information is shared and with whom.

This pandemic is challenging for us all, including those who are incarcerated and their loved ones. We urge you to use your authority to transfer individuals who are at risk of suffering complications from the virus to home confinement.

Thank you for your time and consideration. We look forward to your prompt attention to this matter.

Sincerely,

Cory A. Booker
United States Senator

Robert Menendez
United States Senator

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, "Respondent" | Docket No.: 2:08-cr-0757 (KM) |
| v. | |
| TOMMIE H. TELFAIR, "Movant" | **EMERGENCY MOTION FOR JUDICIAL NOTICE AND TO INTERVENE** |

NOW COMES, Tommie H. Telfair, (Defendant, or herein, "movant") in the above styled moving matter(s) hereby "urgently" requesting judicial notice and implores the Honorable Court to intervene due to the following fact(s) set out below:

1. As has been explained either in movant's §3582 pleadings, and Evidentiary Declaration #1 in support of §3582, the FBOP and FCI Fort Dix continues to jeopardize movant's quality of life by making decision(s) which have intentionally exposed movant to COVID-19;

2. The deliberate indifference of the FBOP and FCI Fort Dix violates movant's 8th Amendment rights to be free from cruel and unusual punishment due to the decision(s) to intentionally expose movant to COVID-19;

3. The deliberate indifferences of the FBOP and FCI Fort Dix violates the Ex Post Facto Clause due to the decision(s) which unilaterally altered the movant's statutory elements in the decision(s) that led to movant being intentionally exposed to COVID-19 subjecting movant to death sentence elements, cruel and

unusual punishment, the unnecessary, willful, and wanton infliction of: mental, physical, emotional, stress, strains, and anxiety without penological justification in contravention to the Constitution and the Bill of Rights.

4. Here, the aforementioned violation(s) are obvious or verifiable by the FBOP and its FCI Fort Dix acting with greater "deliberate indifferences" to movant"s quality of life, his health and safety which can be inferred from the fact(s) that weeks after the administrative decision(s) to relocate inmates from FCI Elkton to FCI Fort Dix then into general populations including the breach into the building, which houses Movant. Inmates directly around movant have been fainting and testing positive for COVID-19 resulting from the breach of COVID-19;

5. Simultaneously, Movant has been receiving antibiotics and steroids for a non-related infection, FCI Fort Dix has forced movant into quarantine with COVID-19 symptomatic inamtes, increasing Movant's exposure to COVID-19, Movant now has a temperature of 101° F due to contributory neglect.

**WHEREFORE** Movant has served more than 80% of his sentence, and implores this Honorable Court to urgently consider: the amount of time already served, the immunal compromising ailment(s), the BMI of Movant meets CDC mandates, Movant's non-violent clear conduct, Movant's consistent employment history prior to and during confinement, the sentencing disparity between Movant and the other individuals mentioned within Movant's PSR where Movant is the ONLY defendant sentenced to 10-30 times higher drug amount(s), concluding granting §3582 serves the interest of justice; and/or any other relief(s) necessary for justice, equal protection of the law(s), and fundamental fairness.

DECLARATION

I, Tommie H. Telfair, under penalty of false swearing pursuant to: 28 U.S.C. §1746, declare that the foregoing documentary evidence and documentary facts regarding this Emergency Motion are true, correct, and complete to the best of my abilities.

Respectfully Submitted on this
17th day of December, 2020.

BY: [signature]
Tommie H. Telfair
In Propria Persona

CERTIFICATE OF SERVICE

I, Tommie H. Telfair, hereby certify that on this 17th day of December, 2020, the foregoing was mailed to the:

United States District Court
District of New Jersey
400 Cooper Street Rm 1050
Camden, NJ 08102-1570

NOTE: Movant does not have the address for AUSA in Camden.

Respectfully Submitted,

[signature]
Tommie H. Telfair
In Propria Persona

Tommie H. Telfair #28440-050
FCI Fort Dix
P.O. Box 2000 unit 5752
JBMDL, NJ 08640

UNITED STATES POSTAL SERVICE
1000
08101
U.S. POSTAGE PAID
FCM LG ENV
RARITAN, NJ
08869
JAN 20, 21
AMOUNT
$1.20
R2304M113800-12

RECEIVED
JAN 26 2021
AT 8:30 M
WILLIAM T. WALSH
CLERK

Office of the Clerk
US District Court of NJ
Cooper Street
Camden, NJ 08101