UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 08-757 (KM) |
| v. | **OPINION & ORDER** |
| TOMMIE TELFAIR, | |
| Defendant. | |

**MCNULTY, U.S.D.J.**

Before the Court is the latest of many motions by Tommie Telfair, primarily concerning his request for compassionate release under 18 U.S.C. § 3582(c)(1)(A). For the reasons expressed herein, the motion (DE 142) is denied.

### I.    BACKGROUND

On February 19, 2010, Mr. Telfair was convicted by a jury of conspiracy and substantive charges of possession with intent to distribute heroin. *See* 21 U.S.C. §§ 846, 841(a).[1]

Based on an offense score of 37 and a criminal history category of VI, his imprisonment range under the "career offender" sentencing guideline was 360 months to life. On November 23, 2011, Hon. Dennis M. Cavanaugh, U.S.D.J. (now retired), granted a downward departure and sentenced Mr. Telfair to 240 months (20 years) of imprisonment. The U.S. Court of Appeals affirmed Telfair's conviction, 507 F. App'x 164 (3d Cir. 2012), and the United States Supreme Court denied certiorari, 134 S. Ct. 167 (2013).

---

[1] By an opinion entered on October 15, 2010, then Chief Judge Garrett E. Brown, Jr., reviewed some of the procedural history to that point, including satellite civil litigation, ethical grievances, etc. This included a history of prolix and abusive *pro se* filings attacking his conviction. (DE 76)

On October 25, 2013, Telfair filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (D.N.J. Civ. No. 13-6585). In a 56-page opinion, the Hon. Susan D. Wigenton denied most of the claims (suppression of evidence, Speedy Trial Act, improper vouching in summation, denial of admission of polygraph evidence, and ineffective assistance of five separate counsel, incorporating their failure to raise or prevail on various grounds). Following additional discovery and an evidentiary hearing, at which Telfair was represented by counsel, Judge Wigenton filed an additional opinion denying the remaining, *Miranda*-based claim, finding Telfair's testimony to be inconsistent and incredible. (D.N.J. Civ. No. 13-6585, DE 58, 59 (Nov. 8, 2018)). The U.S. Court of Appeals for the Third Circuit denied a certificate of appealability. (*Id.* DE 74) Further motions for reconsideration of the denial of § 2255 relief were denied (*See* DE 78, 87), and the Court of Appeals denied a certificate of appealability (DE 95).

In this, the criminal case, Mr. Telfair filed multiple motions and letter applications to correct or reduce sentence. (DE 100, 102, 103, 104, 105, 107, 108, 109, 111, 112).[2] On September 4, 2019, I filed an Order and Opinion (DE 117) denying those motions.

Mr. Telfair continued to file letters and motions in this case. (*See* DE 120, 122, 127, 130.) I denied those motions By Opinion and Order dated January 6, 2021. (DE 134; supplemented by order dated January 25, 2021 (DE 139))

Now before the Court is yet another motion by Mr. Telfair, *pro se,* for reduction of sentence. (DE 142; dated February 24, 2021, filed March 1, 2021). Although he was housed at FCI-Fort Dix at the time of this and earlier motions, he was moved temporarily to Brooklyn Metropolitan Detention Center, and has been or is in the process of being transferred to USP Canaan in Waymart,

---

[2]   The case was reassigned to me on February 13, 2019, in the midst of these listed motions. (DE 106)

2

Pennsylvania.[3] According to the government, he has served approximately 153 months of his sentence and his estimated date of release is February 6, 2024.

## II. DISCUSSION

Mr. Telfair's argument is twofold:

*A. "The COVID-19 pandemic has fundamentally altered the Bureau of Prisons operations such that the conditions of confinement have been excessively brutal thus warranting a sentencing reduction"*

*B. "The 240-month sentence Telfair is serving is grossly excessive given the facts of the case and the community's changing views of drug sentences as a whole."*

### 1. Exhaustion of Administrative Remedies

A threshold issue is exhaustion of administrative remedies. The statute has its own specialized exhaustion requirement, as opposed to the general requirements under, *e.g.*, the Administrative Procedure Act.

The power to file a compassionate release motion under § 3582(c)(1)(A) is lodged in the first instance with the Bureau of Prisons. Once the BOP has denied the defendant's application, or after a period of 30 days has elapsed without a decision by the BOP, the defendant can file a motion in court. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020) (denying remand of appeal seeking compassionate release as futile in light of lack of exhaustion); *United States v. Epstein,* Crim. No. 14-287, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020) (Wolfson, C.J.) (citing cases).

On January 21, 2021, Mr. Telfair submitted to the BOP a letter request for compassionate release based on the unavailability or lack of BOP programming during the COVID-19 lockdown. On February 3, 2021, a program coordinator advised him that the application did not comply with Program Statement 5050.50, governing compassionate release procedures, in that it did not identify a particular category of circumstances unforeseen at the time of

---

[3] *See* Letter of Mr. Telfair titled "CHANGE OF ADDRESS/CHANGE OF VENUE." (DE 144) Because this is a motion in the criminal case, addressed to the sentencing court (as opposed to, *e.g.,* a habeas petition addressed to the defendant's current custodian), no change of venue is required.

3

sentencing that BOP has recognized as grounds for relief under U.S.S.G. § 1B1.13 and the First Step Act. Mr. Telfair did not resubmit his request. Although presented as procedural, BOP's response may also be viewed as a denial on the basis of Mr. Telfair's request not falling into the categories recognized by the BOP. The prison authorities' declination did thus to some degree partake of the merits, and a period of 30 days has passed.

In light of Mr. Telfair's *pro se* status, I will proceed on the lenient assumption that he exhausted administrative remedies.[4]

## 2. Lack of BOP Programs

Under this heading (Ground "A" above), Mr. Telfair notes that the COVID-19 pandemic resulted in a lockdown at FCI-Fort Dix, where he was formerly incarcerated. The First Step Act, he argues, "codified a statutory right to access programs and activities designed to reduce the likelihood of recidivism." On lockdown, however, such programs, including exercise, enrichment programs, and medical or psychological counseling, have been curtailed or unavailable. These conditions, he argues, are unduly harsh and warrant a reduction in sentence, because they were not anticipated by the sentencing court.[5]

---

[4]   I also will assume *arguendo* that these serial motions for compassionate release do not constitute unauthorized and untimely serial § 2255 motions, although certain of the grounds would seem to overlap with subjects of § 2255 relief.

[5]   These grounds are distinct from those previously asserted, and rejected by this Court, which were based on Mr. Telfair's medical condition and alleged susceptibility to severe medical consequences if he should contract a COVID-19 infection. Those medical grounds have, if anything, grown weaker. Mr. Telfair has contracted and recovered from COVID-19, as the Court was already aware, suggesting that he now enjoys some level of immunity from reinfection. (*See* DE 134 at 8.) In addition, he was offered the Moderna vaccine on March 20, 2021, and the Johnson & Johnson vaccine on June 30, 2021, but refused to be vaccinated. Such refusals weigh very heavily against any finding of extraordinary medical circumstances. *See United States v. Broadfield*, No. 20-2906, 2021 WL 3076863, at *2 (7th Cir. July 21, 2021) ("Vaccinated prisoners are not at greater risk of COVID-19 than other vaccinated persons. (A more cautious statement would be that published data do not establish or imply an incremental risk for prisoners—either a risk of contracting the disease after vaccination or a risk of a severe outcome if a vaccinated person does contract the disease.) And a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred.").

Factors to be considered on an application for compassionate release under the First Step Act and U.S.S.G. § 1B1.13 based on "extraordinary and compelling" reasons were surveyed in my prior Opinion (DE 136) and will not be repeated at length here. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; *United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020). Generally, § 1B1.13 addresses medical needs, end-of-life care, and the like. It also, however, contains a catchall category for "Other Reasons," app. note 1(D), as "determined by the Director of the Bureau of Prisons."

Here, as elsewhere, I have followed what I take to be an emerging consensus that U.S.S.G. § 1B1.13—a pre-First Step enactment that has not been amended subsequently—does not limit the discretion of a court considering compassionate release under the First Step Act. *See United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); *United States v. Shkambi*, 993 F.3d 388, 392–393 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109–1111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–1181 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021). *But see United States v. Bryant*, ––– F.3d –––, 2021 WL 1827158, at *1–16 (11th Cir. May 7, 2021) (holding that § 1B1.13 continues to apply); *see also United States v. Long*, No. 20-3064, 2021 WL 1972245, at *8 (D.C. Cir. May 18, 2021) (declining to follow *Bryant*). Based on that broader view, I will accept that curtailment of BOP programs may be a legitimate factor for consideration in the court's analysis of extraordinary and compelling circumstances.

The BOP has, where appropriate, offered such programs as vocational and occupational training, substance abuse treatment, and family/marital needs programs. *See generally* https://www.bop.gov/inmates/fsa/docs/bop_current_needs_assessment_tools

.pdf. The Government summarizes such programs thus:

> Inmate programming, an essential function in BOP facilities, and delivery of First Step Act approved Evidence-Based Recidivism Reduction ("EBRR") Programs and Productive Activities ("PAs"), as required by law, continued to be offered to the extent practicable. Institutions with active COVID-19 cases could make exceptions to these programming requirements for the safety of inmates and staff. *See* https://www.bop.gov/coronavirus/covid19_status.jsp
>
> An updated and detailed First Step Act Approved Programs guide, dated July 2021, outlines the availability of the following non-exhaustive list of EBRR programs: anger management; apprenticeship training; basic cognitive skills; literacy; certification course training; cognitive processing therapy; criminal think (cognitive behavioral therapy); dialectical behavioral therapy; emotional self-regulation; mental illness management and recovery; money smart for adults; parenting from prison; seeking safety or seeking strength; social skills training; threshold (faith-based program focused on values and life skills; vocational training. *See* https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_2107.pdf
>
> A non-exhaustive list of other PAs includes: Brain Health as You Age; Embracing Interfaith Cooperation; Franklin Covey 7 Habits on the Inside; Health and Wellness Throughout the Lifespan; House of Healing – A Prisoner's Guide to Inner Power and Freedom; Mindfulness-Based Cognitive Therapy; Resilience Support; Service Fit; Start Now; Trauma Education; and Wellness Recovery Action Plan. *Id.*

(DE 145, Gov't Brf. at 5–6)[6]

It is plausible, and I accept, that the defendant's access to such programs was severely curtailed during the COVID-19 pandemic. Such restrictions were manifestly necessary, particularly in the months before vaccination became widely available, as Mr. Telfair concedes. Inside prison,

---

[6] I adopt the government's background summary because there is no disagreement that such programs are or should be available. What defendant objects to is the suspension of such BOP programs during the COVID-19 lockdown.

6

just as outside, we have been forced to forgo a wide range of desirable activities.

The effect, however, was limited to perhaps one year out of a 20-year sentence. Mr. Telfair has had, and continues to have, ample opportunity to take advantage of educational and anti-recidivism programs designed to place him on a path to a law-abiding life once he is released. Indeed, BOP records establish that, beginning shortly after Mr. Telfair filed this motion in March 2021,[7] he has enrolled in the following BOP programs: Anger Management (Cognitive Behavioral Therapy); Money Smart for Older Adult Population and General Population; Parenting 2nd Time Around; and Inside Out Dad. (BOP Program Records as of July 20, 2021, DE 145-6) In the remaining two to three years of his sentence, he may choose to enroll in more such programs. In short, access to such programs may have been suspended or delayed, but it has not been denied.[8] And the offering of such programs, to the extent it is based on the First Step Act itself, is aimed at reducing recidivism, as Mr. Telfair acknowledges. They are not naturally viewed as a basis for adjustment of the length, as opposed to the conditions, of sentence.

Mr. Telfair's enrolment in such programs is to be commended,[9] and I consider also their temporary unavailability. Still, while the programs' suspension caused some hardship, I find nothing extraordinary or compelling about Mr. Telfair's circumstances that would warrant a reduction of sentence.

---

[7] More or less, the one-year anniversary of the onset of the pandemic.

[8] At USP-Canaan, where Mr. Telfair will be housed going forward, conditions appear to have eased greatly. Social visiting has resumed, subject to certain precautions. https://www.bop.gov/locations/institutions/caa/caa_tvp_2106.pdf. There are 0 current positive cases among inmates, and 1 among staff. That facility, which houses 1197 inmates, reports 1078 full COVID-19 inoculations. https://www.bop.gov/coronavirus/

[9] I also consider whether Mr. Telfair's participation in such programs, considered as evidence of rehabilitation, would justify a reduction in sentence. I find nothing extraordinary about such participation, and would not grant a reduction on this basis, even if it had been asserted.

7

### 3. Excessiveness of sentence

Under this heading (Ground "B" above), Mr. Telfair argues generally that a twenty-year sentence is excessive and cruel; that social and political attitudes toward lengthy drug sentences have evolved since his sentence was imposed; that it is overly retributive in relation to other goals, such as rehabilitation; that the attribution of certain drug amounts to him (as a conspirator) for sentencing purposes was based on false testimony; and that his criminality was the result of a disadvantaged childhood. In some respects, he rehashes grounds already rejected, *e.g.,* by Judge Wigenton in connection with his earlier motions. I nevertheless consider his arguments.

In essence, he urges that the court reweigh the sentencing factors under 18 U.S.C. § 3553(a) in light of evolving legal and social attitudes. I have considered them, but find that, even in light of Mr. Telfair's subsequent history and evolving attitudes, they weigh against release.

The nature of the offense is quite serious. It involved major heroin trafficking. The very substantial sentence of 240 months represented a downward departure from the guidelines career-offender range of 360 months. Mr. Telfair's background includes convictions for armed robbery and aggravated assault. At sentencing, his counsel cited his job skills, lack of early paternal guidance, efforts to obtain a GED during a prior period of incarceration, family connections, and some lengthy periods in which he avoided contact with the criminal justice system. Such factors, as well as the judge's assessment that 360 months would be an excessive sentence, persuaded the judge to impose a sentence well below what Mr. Telfair's career offender status would have warranted under the Guidelines.

It is true that Mr. Telfair's conduct while incarcerated has been generally good and may bode well for the future. Nevertheless, he is a recidivist and was fairly sentenced as such. The seriousness of the offense, a just punishment, and protection of the public, are well served by a lengthy sentence, and further reduction would create a disparity with similarly situated offenders. General deterrence of heroin trafficking remains an important consideration; specific

deterrence of the defendant is likewise a concern, though perhaps a lesser one at this point. The remaining factors are neutral or inapplicable. Mr. Telfair has served nearly two thirds of his 240- month sentence but he still has between two or three years to serve until his presumptive release date.

The evolving attitudes toward lengthy drug sentences cited by Mr. Telfair do not constitute extraordinary or compelling circumstances. Amendments to sentencing laws may, in a general way, reflect such attitudes, but the laws under which Mr. Telfair was sentenced have not been altered in any way that would change his sentence. In short, these considerations are general and diffuse, not particular to his case.

Now as before, Mr. Telfair continues to complain that no more than 130 grams of heroin should be attributed to him for sentencing purposes. To begin with, the jury found beyond a reasonable doubt that the statutory mandatory-minimum threshold of one kilogram was met:

> THE COURT CLERK: On page two, part A, question one: Did the United States prove beyond a reasonable doubt that the conspiracy involved one kilogram or more of a mixture or substance containing heroin?
>
> Yes or no?
>
> THE FOREPERSON: Yes.

(DE 70 at 208 (Trial Tr. 716)) The sentencing judge later made a finding, based on the evidence at trial, that Mr. Telfair's ongoing heroin operation involved three to ten kilograms of heroin. (DE 96 (Sentencing Tr.) 6.) To the resulting offense level of 34 was added a two-point enhancement for an aggravating role as supervisor. (*Id.* at 11–13) The resulting offense level of 36, however, was lower than the career guideline offense level, so the latter superseded it. It was *as a career offender* that the defendant was assigned an offense level of 37 and a criminal history category of VI. *See* U.S.S.G. § 4B1.1 (table, based on maximum sentence of life for offense involving 1 kilogram or more of heroin).

9

And the Court varied downward substantially to 240 months from the Guidelines range of 360 months to life. (DE 96 (Sentencing Tr.) 20–21.)[10]

In summary, I recognize that the First Step Act grants me some discretion in this matter, but I choose not to exercise it in the manner requested, because I find that (a) the COVID-related suspension of access to BOP programs does not justify a sentence reduction; (b) the sentence, while lengthy, was and is not disproportionate or excessive; (c) evolving attitudes, as reflected, *e.g.,* in the First Step Act, are an insufficient justification for reduction of sentence.

## ORDER

For the reasons discussed above,

IT IS this 28th day of July, 2021

ORDERED that the defendant's motion (DE 142) is DENIED.

The clerk shall close the file.

/s/ Kevin McNulty

_____
KEVIN MCNULTY
United States District Judge

---

[10] Given the analysis above, I need not give extended consideration to dangerousness under the Bail Reform Act, 18 U.S.C. § 3142(g). Applying the § 3142(g) factors, I note that the offense of conviction is a controlled substance offense which, even in the pretrial detention setting, would give rise to a rebuttable presumption of dangerousness, *see* 18 U.S.C. § 3142(e)(3); that the weight of the evidence is reflected in a criminal conviction at trial; and that the defendant has a history including convictions for armed robbery and aggravated assault. The remaining factors, which I have considered, do not outweigh these.